UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10CR593 RWS |
| | ) | (FRB) |
| STEVEN FINK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM,
REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  The defendant filed a Motion To Dismiss (Docket No. 22).  Hearings were held on the defendant's motion on January 27, March 8, May 20 and June 7, 2011.  Supplemental pleadings were filed by the parties on June 28 and July 1, 2011.

Findings of Fact

To the extent necessary to resolve the issues raised in the defendant's pending Motion To Dismiss the undersigned makes these findings of fact based on testimony and evidence adduced at the hearings before the undersigned and on the various exhibits submitted by the parties.

On April 9, 2010, Douglas and Daniel Winterfeld reported to officers of the Macon County Sheriff's Office, the Missouri Highway Patrol and to the Federal Bureau of Investigation (F.B.I.) that cattle owned by them which had been placed in the custody of

Steven Fink were missing.  They discovered this on a visit on that day to the farm and business operated by Fink.  The law enforcement agencies then began an investigation.  Within the next few days they learned of and spoke with others who made complaints similar to those of the Winterfelds.

On April 13, 2010, Agent Keith Kohne of the F.B.I. went to the farm of Steven Fink and conducted an interview of Fink.  Agent Kohne then contacted the Office of the United States Attorney in the Eastern District of Missouri.  He reported the information learned to that point in the investigation and was told that the United States Attorney would consider prosecution of a case against Fink.

On April 14, 2010, the Winterfelds contacted Attorney Mark Williams to represent them concerning the matter.  This was the first contact that Williams had with the Winterfelds about this matter.  Thereafter, Attorney Williams arranged for law enforcement officials to further interview the Winterfelds and provided documents to the officials in support of the complaints made by the Winterfelds.  The interview was conducted on April 21, 2010, by telephone at Attorney Williams' office.  Attorney Williams previously served as the Adair County, Missouri, Prosecuting Attorney and as such had worked with Agent Kohne and officers of the Missouri Highway Patrol in various investigations.

Attorney Williams had conversations with the Assistant United States Attorney assigned to the prosecution of the Fink case about the possibility of restitution being ordered to his clients in the pending case if defendant were convicted. The Assistant United States Attorney made no representations to Williams as to whether restitution would be ordered or what the amount of such restitution might be.

On June 16, 2010, Steven Fink filed for bankruptcy in the United States District Court for the Eastern District of Missouri.[1] The Winterfelds, represented by Attorney Williams filed claims against Fink in the bankruptcy proceeding as unsecured creditors of Fink. Eventually, on the advice of their attorney that there was not likely to be sufficient funds in the bankruptcy estate after claims by secured creditors were satisfied, and that they would not likely be able to obtain funds in the bankruptcy proceeding, and because Attorney Williams' fees continued to mount, the Winterfelds dismissed their claims in the bankruptcy proceedings.

Agent Kohne participated in an investigation of an individual named Kevin Ray Asbury, who was alleged to have engaged in activity similar to that of which Steven Fink has been accused and for which Fink is being prosecuted. That investigation originated in the Western District of Missouri and Agent Kohne

---

[1] Fink's first name is spelled "Stephen" in records of the bankruptcy proceeding. See Cause No. 10-20331, United States Bankruptcy Court, Eastern District of Missouri.

investigated "Leads" sent to him by the agents investigating the Asbury case in the Western District.

Like Fink, Asbury filed for bankruptcy. The Asbury bankruptcy petition was filed in the United States District Court for the Western District of Missouri. Judicial findings in those bankruptcy proceedings would indicate that Asbury engaged in conduct similar to that of which Fink stands accused. (See Defendant's Exhibit, Docket No. 28, Pp. 82-93).

The undersigned takes judicial notice of the proceedings in <u>United States of America v. Kevin Ray Asbury</u>, 2:11CR04031-NKL-1 wherein Kevin Ray Asbury on June 27, 2011, entered a plea of guilty to an information charging him with violations of 18 U.S.C. § 1344 (Bank Fraud); 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1957 (Money Laundering). The information filed by the United States Attorney sets forth allegations similar to those in the indictment pending in this case. The court accepted the defendant's plea on August 5, 2011.

## Discussion

The defendant asserts several grounds in support of his Motion To Dismiss the indictment. He first claims that "This prosecution is an attempt by creditors of Defendant to collect debts which are subject to the automatic stay in Defendant's Chapter 12 bankruptcy proceeding", and that "the matter should more properly be dealt with in the Bankruptcy Court." To the extent

that the defendant's claim can be construed to assert that this prosecution is prohibited by the automatic stay provisions of the Bankruptcy Code, See 11 U.S.C. § 362(a), the undersigned notes that 11 U.S.C. § 362(b)(1) specifically provides that "(b) The filing of a petition under section 301, 302 or 303 of this title, or of an application under Section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay - (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor."

"In our criminal justice system, the Government retains broad discretion as to whom to prosecute. So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision of whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Wayne v. United States, 470 U.S. 598, 607 (1985). (Internal citations and quotation omitted.) The allegations set out in the indictment clearly demonstrate that the prosecutor had probable cause to believe that the defendant had committed violations of the federal criminal code and properly exercised the discretion to seek an indictment from the grand jury.

The defendant next claims that he "is the subject of a selective and vindictive prosecution in that he has been charged

when Kevin Ray Asbury, Debtor in Western District of Missouri Bankruptcy . . . involving cattle . . . has not been prosecuted."

"A selective prosecution claim asks the court to exercise judicial power over a special province of the Executive. The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to take Care that the Laws be faithfully executed. As a result the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. United States v. Armstrong, 517 U.S. 456, 464 (1996) (Internal citations and quotations omitted.)

The defendant bears the burden of proof on a selective prosecution claim. United States v. Huff, 959 F.2nd 731, 735 (8th Cir.), cert. denied, 506 U.S. 855 (1992). In order to make out a prima facie case of selective prosecution the defendant must show: (1) that he was singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and (2) that the decision to prosecute was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights. Id.

In order to meet the first prong of this standard the defendant offered evidence that Kevin Ray Asbury committed acts similar to the defendant and was not being prosecuted. At the time that the defendant filed his motion and at the time of hearings thereon, Asbury had not been prosecuted. However, subsequently, a prosecution of Asbury for those similar acts has been instituted. Asbury has plead guilty and is awaiting sentencing. The defendant asserts in a supplemental pleading filed on July 1, 2011 (Docket No. 37) that the subsequent prosecution of Asbury does not affect his selective prosecution claim because the Asbury prosecution came after the defendant's prosecution was initiated and after his selective prosecution claim was made. This same argument was made and rejected by the court in United States v. Deberry, 430 F.3d 1294, 1300 (10th Cir. 2005).

The defendant attempted to meet the second prong of the selective prosecution standard by showing as an improper motive for the prosecution, that the prosecution was instituted as a result of the relationship between Mark Williams, an attorney for some of the victims, and F.B.I. Agent Keith Kohne. The defendant attempted to show that Williams and Agent Kohne had developed a friendly relationship when Williams served as the Prosecuting Attorney for Adair County and that he and Agent Kohne had worked together in the prosecution of cases. The evidence adduced at the hearing did not support this claim. Law enforcement officials including Agent

Kohne, began the investigation of the defendant's activities based on contact and reports by the victims themselves, and before any contact with Williams.  Further, Agent Kohne conferred with the office of the United States Attorney who agreed to consider federal prosecution of the defendant pending results of the investigation. This conversation between Agent Kohne and the Office of the United States Attorney occurred on April 13, 2010, before the victims had even contacted Williams about the matter.  Moreover in subsequent conversations with the federal prosecutor Williams was told that no assurances or representations could be made by the prosecutor as to whether the victims would receive restitution for their losses as a result of the federal prosecution.

The defendant has failed to meet his burden.

In order to prove a claims of vindictive prosecution the defendant must "show that the prosecution was brought in order to punish the defendant for the exercise of a legal right." <u>United States v. Leathers</u>, 345 F.3d 955, 961 (8th Cir.), <u>cert. denied</u>, 534 U.S. 844 (2004).  The burden is a heavy one and must be considered with a view to the broad discretion given to prosecutors in enforcing criminal statutes.  <u>Id.</u>

The defendant appears to assert here that the prosecution in this case is motivated by the fact that he is attempting to discharge his debts to the victims through bankruptcy proceedings. The evidence adduced does not support such claim.  The

investigation of this case was begun in April, 2010, upon complaints made by the victims. As early as April 13, 2011, long before the defendant filed for bankruptcy, the Office of the United States Attorney expressed an interest in prosecution of the case. There is nothing in the evidence from which the undersigned can conclude that an impermissible motive drove the prosecution in this case.

The defendant further alleges as grounds for dismissal that "These offenses, if any, are more appropriately charged in the state court, as federal prosecution is excessive, unwarranted and is not the most convenient forum for the parties." The fact that the federal government prosecutes a federal crime in a federal court that could have been prosecuted as a state crime in a state court does not violate due process, United States v. Kriens, 270 F.3d 597, 608 (8th Cir. 2001), and does not serve as a basis for a showing of vindictive prosecution. Likewise, the fact that a defendant might be subject to a harsher sentence in federal court than the sentence he would receive in state court on charges based on the same conduct does not violate a defendant's due process rights. United States v. Leathers, supra, 345 F.3d at 962.

The defendant also claims that "The indictment charges a course of conduct, rather than specific violations of the law, and unless specific violations are charged, the indictment is defective." A review of the indictment shows that each count of

the indictment alleges each and all of the essential elements constituting the offense charged and complies in all respects with Rule 7(c), Federal Rules of Criminal Procedure. Each count of the indictment charges a separate and distinct offense. See <u>United States v. McKanry</u>, 628 F.3d 1010, 1017-18 (8th Cir. 2011). The indictment is therefore valid on its face and not subject to dismissal on this ground. <u>Hamling v. United States</u>, 418 U.S. 87 (1974); <u>United States v. Henderson</u>, 416 F.3d 686, 692-93 (8th Cir. 2005).

Lastly, the defendant claims as grounds for dismissal that "The allegations of false statements, being similar to an allegation of perjury, fall within the standards set forth in <u>US (sic) v. Williams</u>, 552 F.2d 226 (8th Cir. 1977) and <u>Bronston v. United States</u>, 409 U.S. 352 (1973)." While the Supreme Court in <u>Bronston</u> held that an answer to a question that is literally true, even though unresponsive, cannot serve as a basis for a perjury conviction, the Eighth Circuit Court of Appeals has noted in <u>United States v. Williams</u>, 552 F.2d 226, 229 (8th Cir. 1977), that "The intended meaning of a question and answer are matters for the jury to decide." Therefore, the defendant's challenges to the government's allegations of false statements are not properly determined on a motion to dismiss the indictment. <u>United States v. Hirsch</u>, 360 F3d. 860, 863 (8th Cir. 2004).

## Conclusion

For all of the foregoing reasons the defendant's Motion To Dismiss should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion To Dismiss (Docket No. 22) be denied.

The parties are advised that they have to and including August 30, 2011, in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of August, 2011.